IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: MAXIM INTEGRATED PRODUCTS, INC. MDL no. 2354 | ) Master Docket<br>) Misc. No. 12-244<br>) MDL No. 2354 |
| This Document Relates to: | ) FISCHER, District Judge |
| All Actions | ) |

**MEMORANDUM ORDER**

AND NOW, this 2nd day of November 2012, upon consideration of the parties' Joint Report on Protective Order, Protective Order and Supplemental Protective Order (Docket No. [115]), and having heard oral argument from counsel at a Case Management Conference conducted on October 2, 2012 (Docket No. [141]/Docket No. [203]), IT IS HEREBY ORDERED that Opposing Parties'[1] Request for Patent Prosecution Bar as contained in the Proposed Supplemental Protective Order ([115] Ex. 1 at ¶ 20) is DENIED, without prejudice.

**I. Background**

The Maxim patent infringement Multidistrict litigation, currently involves 26 parties. (12-244). All of these cases address the same patents, *i.e.*, U.S. Patent Nos. 5,940,510; 5,949,880; 6,105,013; and 6,237,095. Additionally, U.S. Patent No. 5,805,702 is at issue in the cases

---

[1] The Opposing Parties at the time of the filing of the Joint Report on Protective Order on August 13, 2012 and the Case Management Conference on October 2, 2012 were Bank of the West; Branch Banking and Trust Co.; Capital One Financial Corp.; Chipotle Mexican Grill, Inc.; Comerica, Inc.; Expedia, Inc. (WA); Expedia, Inc. (DE); Fidelity Brokerage Services LLC; First United Bank & Trust Co.; Groupon, Inc.; Hotels.com LP; Hotels.com GP, LLC; Hotwire, Inc.; Jack Henry & Associates, Inc.; KeyCorp; KeyBank, N.A.; Mobiata LLC; The PNC Financial Services Group, Inc.; PNC Bank, N.A.; QVC, Inc.; Southwest Airlines Co.; Starbucks Corp.; Union Bank, N.A.; UnionBanCal Corp.; and The Vanguard Group, Inc. On October 12, 2012, seven Maxim related cases were transferred to the Western District of Pennsylvania to be included in the 12-244 MDL, these additional "opposing parties" are Bank of America Corp.; BMO Harris Bank N.A.; CitiGroup, Inc.; JPMorgan Chase & Co.; Target Corp.; U.S. Bancorp; Wal-Mart Stores, Inc.; and Wells Fargo & Co.

1

involving Starbucks (12-877) and Groupon (12-881). The allegedly infringing technologies relate to cell phone apps involved with transferring money or "valuable information." (Docket No. 46)[2.] The charges by Maxim include allegations of direct and indirect infringement, and all of the other parties raise challenges to validity and assert non-infringement. (*Id.*) The alleged infringers include a wide array of banking and non-banking entities. (*Id.*) Maxim asserts infringement for apps used on iPhone, Android and Blackberry devices. (*Id.*) Opposing Parties have denied these allegations or they have sought Declaratory Judgment for non-infringement/invalidity.

This Court utilizes the Western District of Pennsylvania's Local Patent Rules, which include a Protective Order that is automatically entered upon the filing or transfer of any civil case to which these Local Patent Rules apply, unless otherwise modified by the agreement of the parties or Order of the Court. *See* LPR 1.3; LPR 2.2; Appendix LPR 2.2. This default protective order does not contain a "prosecution bar," a provision that prohibits attorneys who receive a disclosing party's confidential information from prosecuting patent applications on behalf of the receiving party. (*Id.*)

The Court ordered the parties to provide a Joint Report regarding the terms and use of a Protective Order at its Initial Status Conference on July 17, 2012 (Docket No. 79), which they, in turn, filed on August 13, 2012. (Docket No. 115). As part of the Joint Report on the Protective Order, the Opposing parties requested a Supplemental Protective Order. (*Id.* at Ex. A). The Court then heard oral argument directed at various provisions of the Supplemental Protective Order at the Case Management Conference on October 2, 2012. (Docket No. 141) One of the matters in

---

[2] Docket No. 46 at MC 12-244, is the Answer to Complaint for Declaratory Judgment and Counterclaims against Branch Banking and Trust Company, by Maxim Integrated Products. This is only 1 of the 26 suits, but is representative of the claims and counterclaims in all the cases.

dispute is the patent prosecution ban, requested by the Opposing Parties, against those acting on behalf of the Plaintiff, Maxim, for a two year period. (Docket No. 115 Ex. A). This proposed provision reads:

> Any person who, acting on behalf of Plaintiff, including outside counsel and consulting and testifying experts for Plaintiff, receives, sees, reviews, or otherwise has access to another party's information that has been designated by any Defendant in this action as "Confidential Attorney Eyes Only Information – Source Code" shall not (i) prepare or participate in the prosecution of any patent application for Plaintiff; (ii) prepare or participate in the prosecution of any patent application in subject areas related to that of any patent-in-suit on behalf of any entity whether or not a party; or (iii) prosecute any patent application related in any way to any patent-in-suit, such as, but not limited to, any continuation, continuation-in-part, or divisional relationship, including any parent or child relationship, and including any application or patent subject to a reissue, ex parte or inter parties re-examination, interference , supplemental examination, inter parties review, or post-grant review proceeding, including any appeals from the foregoing. The prohibition set forth in the preceding sentence shall be in effect from the time such person receives, sees, reviews, or otherwise has access to such Confidential Attorney Eyes Only Information – Source Code through and including two (2) years following the termination of the Action, including any appeals thereof.

(Docket No. 115 Ex. A ¶20).

Maxim opposes a blanket prosecution ban and more specifically opposes an order that would make Mr. Michael North, Esq. subject to such a ban. (Docket No. 115). Mr. North is a partner at North Weber & Baugh LLP in Palo Alto California, and appears before this Court on behalf of Maxim. (Docket No. 175). Maxim argues that Mr. North is an integral part of their team and has been "deeply involved in the infringement analysis" (Docket No. 203 at 36, ln 24). In fact, Mr. North sent cease and desist letters regarding the patents in suit, on behalf of Maxim Integrated Products, to at least two of the Opposing Parties. (Docket No. 97 Ex. 1/Docket No. 14 Ex. A-1 at CA 12-863). Maxim also argues that if such a ban is put in place then and in that

3

event, it should apply to opposing party counsel as well. (Docket No. 115 at 20).

This Court takes judicial notice of Patent & Trademark Office filings. *Old Reliable Wholesale, Inc. v. Cornell Corp.*, 635 F.3d 539, 549, 97 USPQ2d 1993 (Fed. Cir. 2011); *Erbe v. Billeter,* CIV.A. 06-113, 2006 WL 3227765 (W.D. Pa. Nov. 3, 2006) (Court took notice of a service mark registered with the USPTO); *Cf:* Fed. R. Evid. 201(b)(2)[3]. Based on a review of these filings, Maxim Integrated Products is the assignee to 439 patents since 1976 and has 136 patent applications currently pending (for the time period of 2001 to the present).[4] Additionally, the Court notes that since 1976, North Weber and Baugh is the listed patent attorney on 96 total patents, of which 53 (most filed from 2005 to 2010) are assigned to Maxim Integrated Products. No further evidence regarding Mr. North or North Weber & Baugh and their practice has been offered to the Court.

## II. Legal Standard

The determination of whether a protective order should include a patent prosecution bar is a matter governed by Federal Circuit law. *In re Deutsche Bank Trust Co. Americas*, 605 F.3d 1373 (Fed. Cir. 2010) (due to the "unique relationship of this issue to patent law, and the importance of establishing a uniform standard").

The party seeking a protective order and a patent prosecution bar provision bears the burden of showing good cause for such orders and provisions. (*Id.* at 1378). Despite confidentiality designations, "there may be circumstances in which even the most rigorous

---

3 *See further Total Petroleum Puerto Rico Corp. v. Torres-Caraballo 672 F. Supp. 2d 252, 256* (D.P.R. 2009) (citing *Lussier v. Runyon,* 50 F.3d 1103, 1114 (1st Cir 1995), *Vitek Sys., Inc. v. Abbott Labs.,* 675 F.2d 190, 192 n. 4 (8th Cir.1982), *Duluth News-Tribune v. Mesabi Publ'g Co.,* 84 F.3d 1093, 1096 n. 2 (8th Cir.1996) *Island Software & Computer Serv., Inc. v. Microsoft Corp.,* 413 F.3d 257, 261 (2d Cir.2005));
4 As of a search conducted on October 22, 2012.

efforts of the recipient of such information to preserve confidentiality in compliance with the provisions of such a protective order may not prevent inadvertent compromise". (*Id.* at 1378)(citing *U.S. Steel Corp. v. United States,* 730 F.2d 1465 (Fed.Cir.1984)). The risk of inadvertent disclosure is determined by the facts on a "counsel-by-counsel" basis that turns on the extent that counsel is involved in "competitive decision-making." The Federal Circuit has recognized that competitive decision-making does not necessarily apply to a patent prosecution attorney, stating that "denying access to [a party's] outside counsel on the ground that they also prosecute patents for [that party] is the type of generalization counseled against in *U.S. Steel*." (*Id.* at 1378). Whether a patent attorney's involvement with a party is limited to filing patent paperwork and providing broad oversight of patent prosecution, or to obtaining disclosure materials for new inventions or making strategic decisions on patent prosecutions and portfolios, are facts that determine an attorney's decision-making role. (*Id.* at 1380).

Even if it is satisfied that such a risk exists, this Court is granted broad discretion to decide what degree of protection is required, and "must balance this risk against the potential harm to the opposing party from restrictions imposed on that party's right to have the benefit of counsel of its choice". (*Id.*) The court should consider "the extent and duration of counsel's past history in representing the client before the PTO, the degree of the client's reliance and dependence on that past history, and the potential difficulty the client might face if forced to rely on other counsel for the pending litigation or engage other counsel to represent it before the PTO." (*Id*. at 1381). As set forth in *Medimmune, Inc. v. Centocor, Inc.* and affirmed by *Deutsche Bank*, other factors the Court shall consider include the scope of the activities prohibited by the bar, the duration of the bar, and the definition of the subject matter covered by

5

the bar. *Medimmune, Inc. v. Centocor, Inc.,* 271 F. Supp. 2d 762 (D. Md. 2003).

Once a the moving party establishes the need for a prosecution bar, and that the proposed bar is reasonable, the burden shifts to the party seeking an exemption from a patent prosecution bar, who must show on a counsel-by-counsel basis:

> (1) that counsel's representation of the client in matters before the PTO does not and is not likely to implicate competitive decisionmaking related to the subject matter of the litigation so as to give rise to a risk of inadvertent use of confidential information learned in litigation, and
> (2) that the potential injury to the moving party from restrictions imposed on its choice of litigation and prosecution counsel outweighs the potential injury to the opposing party caused by such inadvertent use.

605 F.3d at 1381. For this last step of analysis it is "important for a court, in assessing the propriety of an exemption from a patent prosecution bar, to examine all relevant facts surrounding counsel's actual preparation and prosecution activities, on a counsel-by-counsel basis". *Id.* at 1380.

In *Deutsche Bank*, the district court had refused to adopt a patent prosecution bar, but the Federal Circuit found that the district court made this decision without a full evidentiary record of the attorney's role. *Id.* at 1382. To that end, the Federal Circuit remanded the determination back to the district court for a new balancing analysis based on a full evidentiary record and application of the standards set forth by the Federal Circuit. *Id.* Given that analysis of the disclosure risk, balancing of risks, and the assessment of the propriety of any exemption must be based on "all relevant facts" by a "counsel-by-counsel basis," the Court finds that the present record lacks sufficient evidence to impose a prosecution ban on any counsel at this time.

### III. Conclusion

Based on the forgoing, the Opposing Parties' motion is denied without prejudice, in light

of *Deutsche Bank*, *supra*, as the Opposing Parties have not met their burden to show good cause for a patent prosecution ban. (*Id.* at 1378). Indeed, no party has provided enough evidence for this Court to order such a ban on Mr. North (or any other counsel involved in the case or exceptions to such a ban.) Thus, the parties are granted leave to file a properly supported motion seeking a prosecution bar by November 15, 2012 at 5:00 p.m. Any responses to said motion shall be filed no later than November 29, 2012 at 5:00 p.m. A hearing shall be set at the discretion of the Court.

    *s/Nora Barry Fischer*
    Nora Barry Fischer
    UNITED STATES DISTRICT JUDGE

cc/ecf: All counsel of record