IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: MAXIM INTEGRATED PRODUCTS, INC. MDL No. 2354 <br><br> This Document Relates to: All Actions | Master Docket: Misc. No. 12-244 <br> MDL No. 2354 |

# MEMORANDUM OPINION

**CONTI, Chief District Judge**

Centralized in this court for coordinated and consolidated pretrial proceedings at the above-captioned master docket are a number of patent infringement cases transferred to this court by order of the Panel on Multidistrict Litigation. (ECF No. 1.) These cases involve five related patents, owned by Maxim Integrated Products, Inc. ("Maxim"), which are directed to electronically performing secure transactions. (Id.) Maxim accuses various parties, referred to in these proceedings as Opposing Parties (the "OPs"), of creating smartphone software applications, or "Apps," that infringe its patents. At one time nearly thirty separate cases were proceeding at the master docket number assigned to this MDL, 12-mc-244, to which all citations to the record refer. The court is informed that there are currently only six OPs remaining.

The court issued a memorandum opinion and order concerning claim construction on December 17, 2013. (ECF Nos. 742-43.) On June 2, 2014, the United States Supreme Court issued its decision in Nautilus, Inc. v. Biosig Instruments, Inc., 134 S.Ct. 2120 (2014). In Nautilus, the Supreme Court replaced the tests previously established and applied by the Court of Appeals for the Federal Circuit to determine whether a patent claim is invalid for indefiniteness, i.e., the "insoluble ambiguity" and "amenable to construction" tests, with a "reasonable certainty" test. Nautilus, 134 S.Ct. at 2124. Following issuance of that decision, the OPs

promptly filed a motion asking this court to reconsider its claim construction ruling that the term "verification signal" is not indefinite. (ECF Nos. 855 and 856 at 4-6.) That term is found in claim 1 of United States Patent No. 6,237,095 (the "'095 Patent"), which reads, in pertinent part: "adjust said first data object according to said second data object responsive to a *verification signal* from said electronic device." (ECF No. 610-13 (JX-9) at 27 (emphasis added).) Maxim filed a brief in opposition to the OPs' motion, and the court heard oral argument from the interested parties on July 9, 2014. (ECF No. 874.)

For the reasons set forth herein, the motion will be denied because the Supreme Court's decision in <u>Nautilus</u> does not require this court to change its previously-issued claim construction of "verification signal" or of any other allegedly indefinite claim term.

## I. **The Scope of This Opinion**

As an initial matter, although the OPs ask that the court reconsider only its ruling with respect to the "verification signal" term, they state that "<u>Nautilus</u> likewise requires reversal of this court's definiteness rulings concerning the other terms [the] OPs identified as indefinite." (ECF No. 856 at 2 n.3.) With respect to these other terms, the OPs offer to present additional argument "should the court find it helpful," but opt to expressly reserve their appellate rights. (Id.)

During claim construction briefing, the OPs contended that five claim phrases were indefinite: (1) "time stamping a predetermined function;" (2) "store a transaction script, the transaction script including at least a representation of the time stamp generated by the timing circuit;" (3) "said combination of said portable module reader and said secure microcontroller performing secure data transfers with said first portable module;" (4) "substantially unique electronically readable identification number;" and (5) "responsive to a verification signal from

said electronic device." (ECF No. 677-1.)[1] The Special Master concluded that the first four claim phrases were definite, but that "verification signal" was indefinite. (ECF No. 691 at 56-58, 65-81.) The court, after considering the parties' objections to the Special Master's Report and Recommendation, found that all five claim phrases were definite. (ECF No. 742 at 8-9, 26-27, 29-35.)

In the instant motion, the OPs ask this court to reconsider only its prior ruling with respect to the definiteness of "verification signal." This court, however, will reconsider its prior rulings with respect to the other four allegedly indefinite claim terms in an effort to obviate the need for a remand to this court to do so in the first instance in the future. The court does not require additional argument or briefing from the parties in order to do so.

## II. The Parties' Arguments

According to the OPs, reconsideration is appropriate in this case due to an intervening change in the controlling law. Max's Seafood Cafe ex rel. Lou–Ann, Inc. v. Quinteros, 176 F.3d 669, 673 (3d Cir. 1999). The OPs contend that "the term 'verification signal' does not meet the more demanding definiteness standard under Nautilus" because it "does not appear anywhere in the specification" and is "susceptible to multiple meanings." (ECF No. 856 at 5.) The OPs contend that this court improperly focused on a single one of the OPs' arguments in its claim construction decision, and concluded that the term "can be afforded a reasonable interpretation," which is improper after Nautilus because the Supreme Court rejected the principle that a claim is definite if a court can ascribe some meaning to it after-the-fact during

---

[1] Claim phrase (1) is found in claim 1 of United States Patent No. 6,105,013 (the "'013 Patent") (ECF No. 610-10 (JX-7)); claim phrases (2) and (5) are found in claim 1 of United States Patent No. 6,237,095 (the "'095 Patent") (ECF No. 610-13 (JX-9)); and claim phrases (3) and (4) are found in claim 1 of United States Patent No. 5,940,510 (the "'510 Patent") (ECF No. 610-6 (JX-3)).

3

claim construction. (Id. at 5-6.) The OPs argue that "verification signal" is indefinite because none of the numerous possible meanings are made clear by the claims or specification, making it impossible for the claim phrase to satisfy Nautilus's new "reasonable certainty" test. (Id. at 6.) The OPs also object to this court's stated concern with preserving the validity of the patent, noting that under Nautilus the "presumption of validity does not alter the degree of clarity that § 112, ¶ 2 demands from patent applicants." (Id.)

Maxim opposes the motion for reconsideration because the court's claim construction decision meets the Nautilus standard. (ECF No. 874 at 1.) According to Maxim, the OPs' argument that the phrase "verification signal" must be indefinite because the OPs, Maxim, the Special Master, and the court disagree about its meaning must be wrong because a) the same argument was rejected by the Supreme Court, and b) there are always disagreements with respect to the meaning of claim terms during patent litigation. (Id. at 2, 10-11.) Maxim contends that, under Nautilus, if one of ordinary skill in the art would understand the scope of the invention by carefully evaluating the claims, the specification, and the prosecution history, the claim is not indefinite. (Id.) Maxim asserts that this court's claim construction of "verification signal" satisfies the Nautilus test because that construction was based on "convincing intrinsic evidence" that one of ordinary skill in the art would understand the term's meaning upon examining the language of the patent. (Id. at 7-8.)

### III. The Law of Indefiniteness

#### A. The Law as Set Forth in This Court's Claim Construction Decision

In the claim construction decision, this court included the following summary of the applicable law with respect to indefiniteness:

> Patent claims must particularly point out and distinctly claim the subject matter regarded as the invention. 35 U.S.C. § 112, ¶ 2. Whether a claim meets this definiteness requirement is a question of law. Amgen Inc. v. F. Hoffman–LA Roche Ltd., 580 F.3d 1340, 1371 (Fed. Cir. 2009); Young v. Lumenis, Inc., 492 F.3d 1336, 1344 (Fed. Cir. 2007). The primary purpose of the definiteness requirement is to ensure that the claims are written in such a way that they give notice to the public of the extent of the legal protection afforded by the patent so that interested members of the public, e.g., competitors of the patent owner, can determine whether or not they infringe. All Dental Prodx, LLC v. Advantage Dental Prods., Inc., 309 F.3d 774, 779–80 (Fed. Cir. 2002) (citing Warner–Jenkinson Co. v. Hilton Davis Chem. Co., 520 U.S. 17, 28–29 (1997)). In other words, "[a] patent holder should know what he owns, and the public should know what he does not." Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., 535 U.S. 722, 731 (2002).
>
> An accused infringer must demonstrate by clear and convincing evidence that one of ordinary skill in the relevant art could not discern the boundaries of the claim based upon the claim language, the specification, the prosecution history, and the knowledge in the relevant art in order to meet the "exacting standard" to prove indefiniteness. Halliburton Energy Servs., Inc. v. M-I LLC, 514 F.3d 1244, 1249-50 (Fed. Cir. 2008). **"Only claims 'not amenable to construction' or 'insolubly ambiguous' are indefinite."** Id. at 1250 (quoting Datamize, LLC v. Plumtree Software, Inc., 417 F.3d 1342, 1347 (Fed. Cir. 2005)). Where "one skilled in the art would understand the bounds of the claim when read in light of the specification" the claim is sufficiently definite. Exxon Research & Eng'g Co. v. United States, 265 F.3d 1371, 1375 (Fed. Cir. 2001). The ultimate issue is whether someone working in the relevant technical field could understand the bounds of a claim. Haemonetics Corp. v. Baxter Healthcare Corp., 607 F.3d 776, 783 (Fed. Cir. 2010). Where "the meaning of a claim is discernible, even though the task may be formidable and the conclusion may be one over which reasonable persons will disagree," the claims are sufficiently clear to avoid invalidity on indefiniteness grounds. Exxon Research, 265 F.3d at 1375. This approach "accord[s] respect to the statutory presumption of patent validity…and…protect[s] the inventive contribution of patentees, even when the drafting of their patents has been less than ideal." 35 U.S.C. § 282; Datamize, 417 F.3d at 1347–48.

(ECF No. 742 at 8-9 (emphasis added).)

The Supreme Court's decision in Nautilus rejected the *'not amenable to construction'* and *'insolubly ambiguous'* tests set forth in the above statement of the law because they "tolerate some ambiguous claims but not others." Nautilus, 134 S.Ct. at 2124. The Court held, instead, that "a patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, *with reasonable certainty*, those skilled in the art about the scope of the invention. Id. In other words, the Supreme Court replaced the 'not amenable to construction' and 'insolubly ambiguous' tests with a 'reasonable certainty' test.

Nautilus does not overrule any other legal principle recited in this court's claim construction decision. Nautilus, in fact, reaffirms the majority of this court's statement of the law; specifically its focus on the perspective of a person of ordinary skill in the art, the importance of the public-notice function of the definiteness requirement, and the need to decide definiteness questions by reviewing the claims, the specification, and the prosecution history. (ECF No. 742 at 8-9.) As the OPs acknowledged at oral argument, a party challenging the validity of a patent under § 112, ¶ 2 must still satisfy the clear and convincing evidence standard, even after Nautlius.

**B. The Supreme Court's Decision in *Nautilus***

The invention at issue in Nautilus was a heart rate monitor incorporated into a piece of exercise equipment. Nautilus, 134 S.Ct. at 2126. The pertinent claim required that a live electrode and a common electrode be "mounted…in spaced relationship with each other" on each half of a cylindrical bar (e.g., a handlebar). Id. The district court granted the motion for summary judgment filed by Nautilus, Inc. ("Nautilus"), finding that the term "spaced relationship" was indefinite because it "did not tell [the court] or anyone what precisely the space

6

should be," or even supply "any parameters" for determining the appropriate spacing. Id. at 2127. The Court of Appeals for the Federal Circuit reversed, finding that the phrase was definite because the intrinsic evidence, i.e., the claim language, the specification, and the prosecution history, disclosed "inherent limits of that spacing," those being that the space had to be smaller than the human hand and large enough that the two kinds of electrodes did not effectively merge such that they could not detect separate signals from the user's hand. Id. The Supreme Court vacated the court of appeals' judgment and remanded with instructions to the appellate court to reconsider, under the proper standard, whether the claims in the patent assigned to Biosig Instruments, Inc. ("Biosig") are sufficiently definite. Id. at 2131.

At the Supreme Court, the dispute between the parties was framed as a difference "of just how much imprecision § 112, ¶ 2 tolerates." Id. at 2128. Nautilus' position was that "a patent is invalid when a claim is 'ambiguous, such that readers could reasonably interpret the claim's scope differently'." Id. Biosig, and the government, "would require only that the patent provide reasonable notice of the scope of the claimed invention." Id.[2] In resolving this dispute and reaching its holding, the Supreme Court summarized the generally- and still- accepted principles of indefiniteness, including that the inquiry must be made from the perspective of a "person skilled in the art at the time the patent was filed" and that the "claims are to be read in light of the patent's specification and prosecution history." Id. at 2128. The Court characterized § 112, ¶ 2 as requiring a "delicate balance" between the "inherent limitations of language" and the need of patents to "afford clear notice of what is claimed, thereby apprising the public of what is still open to them" so as to avoid "a zone of uncertainty which enterprise and

---

[2] Although the Supreme Court did not state its holding in these terms, its decision in Nautilus is closer to Biosig's position than to Nautilus' position. The Court expressed primary concern with the public-notice function of a patent's claims, and never accepted Nautilus' position that a claim subject to more than one reasonable interpretation must be indefinite.

7

experimentation may enter only at the risk of infringement claims." Id. at 2128-29. The Court noted that "absent a meaningful definiteness check… patent applicants face powerful incentives to inject ambiguity into their claims." Id. at 2129.

The Court ultimately reconciled these competing concerns with its newly-stated requirement that "a patent's claims, viewed in light of the specification and prosecution history, inform those skilled in the art about the scope of the invention with reasonable certainty." Id. According to the Court, this standard "mandates clarity while recognizing that absolute precision is unattainable." Id. The Court concluded that the Court of Appeals for the Federal Circuit's "amenable to construction" and "insolubly ambiguous" standards "breed lower court confusion" and "diminish the definiteness requirement's public-notice function and foster the innovative-discouraging 'zone of uncertainty'." Id. at 2130. The Court labeled the court of appeals' standards as "amorphous" and as "leav[ing] courts and the patent bar at sea without a reliable compass." Id. at 2130, 2131. The Court also found the court of appeals' standards to be erroneous because they focused on whether a court, viewing matters after-the-fact, could "ascribe *some* meaning to a patent's claims," whereas the proper question to ask is what "a skilled artisan at the time of the patent application" would understand is being claimed. Id. (emphasis in original).

In a footnote, the Court spoke to the limitations of its holdings. The Court indicated that the parties before it agreed that the "the presumption of validity does not alter the degree of clarity that § 112, ¶ 2 demands," and declined to decide whether "factual findings subsidiary to the ultimate issue of definiteness trigger the clear and convincing evidence standard and, relatedly, whether deference is due to the PTO's resolution of disputed issues of fact" because those questions were not before the Court. Id. at 2130 n.10.

## IV. This Court's Definiteness Decision with respect to "Verification Signal"

As set forth above, this court determined that "verification signal" was definite, contrary to the Special Master's recommendation. (ECF No. 742 at 32-33.) The entirety of this court's decision with respect to the definiteness of "verification signal" is reproduced immediately below:

> The Special Master found this term to be indefinite, and claim 1 of the '095 Patent to be invalid. Maxim objects to this conclusion, (ECF No. 705 at 2-8), and the OPs argue in support of this court's adoption of the Special Master's finding (ECF No. 714). The court heard oral argument on this term at the November Hearing. As summarized above, the burden is on the OPs to prove, by clear and convincing evidence, that the term is insolubly ambiguous and incapable of being given any reasonable meaning. Biosig Instruments, Inc. v. Nautilus, Inc., 715 F.3d 891, 901-02 (Fed. Cir. 2013); Young, 492 F.3d at 1346. Close questions of indefiniteness must be resolved in favor of the patentee. Bancorp Services, LLC v. Hartford Life Ins. Co., 359 F.3d 1367, 1372 (Fed. Cir. 2004).
>
> The Special Master found this term to be indefinite because the verification signal is "typically" contained in the certificate, which is separately claimed and not linked to the "verification signal," and because the recited "adjustment" is made in response to the "compare and check" operations, not in response to the signal originating from the "electronic device," as required by the claims. (ECF No. 691 at 75-78.) The Special Master's conclusions are well-reasoned and supported by the record. So too, however, are Maxim's responsive positions.
>
> Maxim convincingly cites to the language of the patent itself indicating that the "certificate" claimed earlier in claim 1 is different from the "verification signal." (ECF No. 705 at 8.) With respect to the Special Master's second justification, Maxim explains that the term "verification signal" can be afforded a reasonable interpretation if it is understood to be a signal that is capable of being verified, resulting in adjustments being made *indirectly* or *ultimately* in response thereto. (ECF No. 705 at 5-7; ECF No. 610 at JX-9, 14:30-35, figs. 8 & 10.) Maxim's argument that the information provided from the merchant or service provider side of the transaction in figures 8 and 10 is what allows the "compare and check" operations to proceed, and adjustment to ultimately take place, is convincing. (ECF No. 705 at 7.) Both experts opined in support of the position advanced by the party by whom they were retained. The OPs' expert, however, did not opine that a person of ordinary skill in the art would understand "responsive" to mean only *immediately* or *directly* responsive.

> When the evidence is such that reasonable persons can disagree, this court is constrained to issue a construction that preserves the validity of the claim. Biosig, 715 F.3d at 901-02; Bancorp, 359 F.3d at 1372. The court need not "rewrite" the claims of the patent to reach this conclusion; rather, the intrinsic record aptly supports Maxim's position. This court is required by controlling precedent to reject the Special Master's recommendation and issue a construction of the term "verification signal."

(ECF No. 742 at 32-34.)

Of the decisions that this court cited in the above analysis, as well as in the earlier-reproduced summary of the generally applicable law with respect to indefiniteness, the Supreme Court's decision in Nautilus vacated the Court of Appeals for the Federal Circuit's judgment in Nautilus (short cited by this court as Biosig), and abrogated Datamize's and Exxon's "insolubly ambiguous" and "amenable to construction" tests. Nautilus, 134 S.Ct. at 2130 n.9. Under Nautilus, a court must now ask whether the patent "fail[s] to inform, with reasonable certainty, those skilled in the art about the scope of the invention." Id. at 2124. The other legal principles relied upon by this court in its claim construction decision remain binding after Nautilus, and properly focus on the public-notice function of § 112, ¶ 2, and the need to answer the definiteness question from the viewpoint of one of ordinary skill in the art at the time of the invention. (ECF No. 742 at 8-9.) For the reasons that follow, this court concludes that even under the Supreme Court's new "reasonable certainty" test, "verification signal" is definite.

The Special Master recommended that the phrase "verification signal" be found indefinite for two reasons: (1) the verification signal is "'typically' contained in the certificate," yet the certificate is claimed separately and is not linked to the verification signal in the patent; and (2) adjustments are made in response to the "'compare' and 'check' operations" not in response to the verification signal, as is claimed. (ECF No. 691 at 76-77.) This court resolved the parties' objections to the Special Master's recommendations by reaching two conclusions: (1)

10

based on the *language of the patent*, the "certificate" is different from the "verification signal"; and (2) the OPs produced no evidence that *a person of ordinary skill in the art* would understand "'responsive' to mean only *immediately* or *directly* responsive," making the intervening "compare and check operations" relied upon by the Special Master inconsequential to answering the definiteness question. (ECF No. 742 at 33-34 (emphasis added).) Neither of these conclusions is affected by the Nautilus decision.

The OPs, however, argue that these conclusions must be reversed because this court's claim construction decision recited the now-invalid "insolubly ambiguous" and "amenable to construction" tests, and improperly attributed some meaning, after-the-fact, to a phrase susceptible to multiple meanings, in a misguided, and now improper, effort to preserve the validity of the claim. (ECF No. 856 at 5-6.) As expressed during oral argument, the OPs' primary position is that "verification signal" is indefinite because the specification does not ascribe any particular meaning to the phrase, and the various embodiments in the specification conflict, making it impossible to assign any definitive meaning to the phrase. (Id.) In support of their position, the OPs discussed Figures 7 and 9 of the '095 Patent, and their corresponding explanatory text, at length during oral argument. '095 Patent, 9:41, et seq. and 11:20, et seq. The OPs argued that these figures reflect instances in which data objects are adjusted without any compare and check operations or verification signals, proving that this court's claim construction was improper. According to the OPs, these figures demonstrate that "verification signal" is a broad and ambiguous term that lacks the clarity mandated by Nautilus.

As an initial matter, the court finds that the bulk of the OPs' arguments do no more than cloak the positions they previously took during claim construction proceedings in the light of Nautilus' "change in the law." This court rejected the OPs' positions in a claim

construction decision that was fact-specific, and grounded in the language and structure of the '095 Patent's specification and claims. The reasoning and analysis set forth in that decision apply with equal force both before and after Nautilus. The Special Master concluded that "verification signal" was indefinite because "the adjustment is not responsive to what is being transmitted…as asserted by Maxim, but responsive to the 'compare' and 'check' operations." (ECF No. 691 at 77.) The court considered the Special Master's analysis, but instead concluded that the OPs made no showing that "a person of ordinary skill in the art would understand 'responsive' to mean only *immediately* or *directly* responsive," making "Maxim's argument that the information provided from the merchant or service provider side of the transaction in figures 8 and 10 is what allows the "compare and check" operations to proceed, and adjustment to ultimately take place…convincing." (ECF No. 742 at 33.) The OPs were required to prove, by clear and convincing evidence, that the claim phrase was indefinite. This court studied the language of the patent, considered the expert evidence presented by the parties, and found that the OPs failed to meet their burden of proof. Such a decision is unaffected by Nautilus.

The OPs' reliance, at oral argument, on Figures 7 and 9 does not establish that the specification of the '095 Patent is so ambiguous and uncertain that it "fail[s] to inform, with reasonable certainty, those skilled in the art about the scope of the invention." Nautilus, 134 S.Ct. at 2124. Those figures, instead, actually align with this court's claim construction of "verification signal." Figure 7, and its corresponding text, reflects an adjustment being made after information transmitted between a Merchant and a Bank is "confirm[ed]" and "this test is passed." '095 Patent, 9:66-10:16. Figure 9, and its corresponding text, reflects an adjustment being made after it is confirmed that certain data exchanged between a Merchant and a Payee "agree." '095 Patent, 11:34-35. The process reflected in these exemplars is similar to the process

12

reflected in Figures 8 and 10, which this court relied on in its claim construction opinion. (ECF No. 742 at 32-33.) To this point, the court finds it particularly noteworthy that Maxim included a discussion of Figure 9, and the '095 Patent's text following the description of Figure 7, in both its original claim construction presentation, and its R&R objections presentation to support its proffered construction of "verification signal." (Maxim's Claim Construction Slides at p. 14; Maxim's R&R Objections Slides at p. 32.) Contrary to the OPs' contentions, Figures 7 and 9 do not cause the term "verification signal" to be uncertain or ambiguous, or to fail Nautilus' "reasonable certainty" test as a result.

Even if the OPs were correct that Figures 7 and 9 could not be reconciled with this court's prior claim construction, it does not follow that the construction is incorrect and that claim 1 is invalid as indefinite. It is not necessary that each claim read on every embodiment disclosed in a patent. Baran v. Medical Device Technologies, Inc., 616 F.3d 1309, 1316 (Fed. Cir. 2010). The fact that all claims of the '095 Patent are dependent on claim 1 does not change the result. It is possible for a patent to disclose subject matter, but not claim it, resulting in abandonment of the unclaimed subject matter to the public. Johnson & Johnston Assoc., Inc. v. R.E. Serv. Co., Inc., 285 F.3d 1046, 1054 (Fed. Cir. 2002). The court expresses no opinion with respect to these matters, but states these rules only to demonstrate that the failure of claim 1 to read on the embodiments disclosed in Figures 7 and 9 would not mean that the '095 Patent must be invalid as indefinite.

Turning now to the legal principles relied upon by this court in the claim construction decision, there is no dispute that this court recited the then-applicable, but now improper, "insolubly ambiguous" and "amenable to construction" standards. (ECF No. 742 at 8, 33.) Not surprisingly, the OPs repeatedly cite to these statements of the law as proof that this

court's conclusion that "verification signal" is not indefinite is erroneous after Nautilus and must be reversed. (ECF No. 856 at 3, 6.) As reproduced above, however, this court found the claim phrase "verification signal" to be definite based on the *language of the patent* and the knowledge of *one of ordinary skill in the art*. (ECF No. 742 at 32-33 (emphasis added).) The Supreme Court's decision in Nautilus reaffirms that these are the considerations that must inform a court's indefiniteness inquiry. Nautilus, 134 S.Ct. at 2128-31. The "verification signal" limitation cannot "fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention," when this court previously analyzed the language of the patent with respect to "certificate," "verification signal," and "responsive," as viewed from the perspective of a person of ordinary skill in the art, and found that the phrase was definite. (ECF No. 742 at 32-33.) Even under the new "reasonable certainty" test, the phrase "verification signal" remains definite for the same reasons set forth in this court's prior claim construction decision.

This court also relied on the legal precept that "close questions of indefiniteness must be resolved in favor of the patentee," citing Bancorp Services, LLC v. Hartford Life Insurance Company, 359 F.3d 1367 (Fed. Cir. 2004). (ECF No. 742 at 33). Bancorp was not overruled by Nautilus. Regardless of the status of Bancorp, the legal proposition for which this court cited it does no more than reflect that indefiniteness must be proven by clear and convincing evidence, a standard that the Supreme Court left undisturbed in Nautilus. Nautilus, 134 S.Ct. at 2130 n.10. This court's statement that "[w]hen the evidence is such that reasonable persons can disagree, this court is constrained to issue a construction that preserves the validity of the claim" is likewise a statement of this still-applicable clear and convincing evidence standard. (ECF No. 742 at 34.) The inclusion of these principles of law in this court's prior claim construction decision, therefore, does not invalidate the prior definiteness rulings.

Contrary to the OPs' assertions, by relying on these principles, this court did not endeavor to manufacture an after-the-fact construction of "verification signal," for the sole purpose of ensuring that the '095 Patent was not invalidated. (ECF No. 856 at 6.) The prior construction given to the term "verification signal" was explicitly grounded in the specification of the '095 Patent, and based on the OPs' failure to meet their burden to prove indefiniteness by clear and convincing evidence. (ECF No. 742 at 33-34.) This is not a case in which a claim term was found to be definite only because a court could, in hindsight, ascribe some meaning to it in order to render it so.

Although the Supreme Court changed the standard against which indefiniteness must be judged in <u>Nautilus</u>, this court's general statement of the law of indefiniteness, and its specific analysis of the phrase "verification signal," remain valid and viable. Under the "reasonable certainty" test, the phrase "verification signal" would remain definite for the same reasons set forth in this court's prior claim construction decision, i.e., because "certificate" is not synonymous with "verification signal" in the language of the patent, and because the OPs made no showing that a person of ordinary skill in the art would understand "responsive" to mean only immediately and directly responsive. (ECF No. 742 at 32-34.) The <u>Nautilus</u> decision does not require that any change be made to this court's prior ruling with respect to the definiteness of "verification signal."

### V. **This Court's Definiteness Decisions with respect to the Other Claim Phrases**

As stated previously, although the OPs challenged four other claim phrases on the ground that they were indefinite during claim construction, their motion for reconsideration asks only that this court change its ruling with respect to "verification signal." (ECF No. 856 at 2.) The other phrases are: (1) "time stamping a predetermined function;" (2) "store a transaction

15

script, the transaction script including at least a representation of the time stamp generated by the timing circuit;" (3) "said combination of said portable module reader and said secure microcontroller performing secure data transfers with said first portable module;" and (4) "substantially unique electronically readable identification number." Reconsidering "verification signal" but not the other four phrases would result in piecemeal litigation, and run the risk of a future remand to this court to consider the effect of Nautilus on them in the first instance. In an effort to avoid that result, even though the OPs have not asked for reconsideration of these phrases, this court has undertaken a review of them. No additional briefing or argument is necessary in order to do so. A review of these phrases indicates that the Nautilus decision would not change any of this court's definiteness rulings.

> **(1) time stamping a predetermined function:** The OPs argued that the phrase "time stamping a predetermined function" in the '013 Patent was indefinite because software programs cannot be time stamped. (ECF No. 642 at 66-68.) This court found that the phrase was not indefinite because the OPs' argument that "predetermined function" is synonymous with "software program" was unsupported and illogical. Once that argument was rejected, construction of the phrase followed from the court's prior construction of the terms "time stamp" and "time stamping data transactions." (See ECF No. 742 at 26-27.) Nautilus' holding would not change this fact-dependent analysis. This claim phrase would remain definite under Nautilus.
>
> **(2) store a transaction script, the transaction script including at least a representation of the time stamp generated by the timing circuit:** The OPs contended that this phrase was indefinite because: (1) the specification does not

disclose or explain its meaning; (2) the asserted claim is internally irreconcilable; and (3) users cannot create transaction scripts. (ECF No. 642 at 68-70.) The court concluded that the OPs' interpretation of the claim and specification language was based upon a fundamental misapprehension of what the claim states, and that the OPs' indefiniteness argument was not supported by any evidence, beyond counsel's arguments. (ECF No. 742 at 29-30.) The court examined the language of the '095 Patent and found that the claim contemplates a script that includes a "representation of the time stamp," and not that the script itself be time stamped, as the OPs contended. (Id.) The court noted that Maxim presented numerous examples from the specification that reflect operation of the properly interpreted requirement. (Id.) The decision in Nautilus is in line with this court's ultimate conclusion that "[t]he OPs cannot meet the 'exacting standard' to prove by clear and convincing evidence that one of ordinary skill in the relevant art could not discern the boundaries of the claim based upon the claim language, the specification, the prosecution history, and the knowledge in the relevant art." (ECF No. 742 at 29-30.) These are the same legal principles and standards that the Supreme Court left undisturbed in Nautilus. This claim phrase would remain definite under Nautilus.

**(3) said combination of said portable module reader and said secure microcontroller performing secure data transfers with said first portable module:** The OPs contended that this phrase was indefinite because it mixed apparatus and method claim limitations, in violation of IPXL Holdings, LLC v. Amazon, Inc., 430 F.3d 1377 (Fed. Cir. 2005). (ECF No. 642 at 60-61.) Nautilus

17

did not address indefiniteness based on mixing apparatus and method claim limitations. In rejecting the OPs' position during claim construction, this court, applying the clear and convincing evidence standard, concluded that the OPs' failure to produce any expert evidence indicating how the claim would, or would not, be understood by one of ordinary skill in the art in response to Maxim's expert testimony on that issue was "significant, and arguably dispositive." (ECF No. 742 at 30-32.) This court, nevertheless, considered the substance of the OPs' legal argument, but concurred with the Special Master's explanation with respect to why, read in the context of the specification and claims of the '510 Patent, it would be understood by a person of ordinary skill in the art that infringement of the '510 Patent occurred when a system capable of performing secure data transfers was created. (Id. at 32.) This court found that it would be readily apparent that creation of a system with the required parts and the referenced capabilities would result in infringement, and that actual performance of the purpose for which the system was built was unnecessary. (Id.) This claim phrase would remain definite under Nautilus because this court answered the definiteness question by asking whether one of ordinary skill in the art would understand when the claim was infringed, which reflects the Supreme Court's primary focus in Nautilus on the public-notice function of patent claims.

**(4) substantially unique electronically readable identification number:** The OPs argued that this phrase was indefinite because there was no standard against which the word of degree - "substantially unique" - could be measured. (ECF No. 642 at 62-64.) The Special Master concluded that the specification of the '510

Patent provided criteria for one skilled in the art to determine if an identification number is substantially unique, and the court agreed. (ECF No. 742 at 34-35.) In doing so, this court examined the language of the '510 Patent and found that it was clear that "substantially" unique was unique enough to distinguish one portable module from another portable module, making the term definite. (Id. at 35.) The decision in Nautilus is in line with this court's ultimate conclusion that "[t]he OPs made no sustainable argument, and certainly presented no clear and convincing evidence, that the patent provides no standard for measuring the degree of uniqueness such that a person of ordinary skill in the art would be unable to determine if an identification number was 'substantially unique' or not." (Id.) Notably, although the patent-in-suit in Nautilus included the phrase "produce a substantially zero [EMG] signal," the Supreme Court did not address this word-of-degree issue. Nautilus, 134 S.Ct. at 2126. Therefore, Nautilus does not change this court's analysis or conclusion with respect to the definiteness of this term. This claim phrase would remain definite under Nautilus.

The Nautilus decision does not require that this court's prior rulings with respect to the definiteness of any other challenged claim terms or phrases be changed.

## VI. Conclusion

For the foregoing reasons, the Supreme Court's recent decision in Naultius does not require that this court change any of its prior definiteness rulings, and the motion for reconsideration will be denied. An appropriate order will be filed contemporaneously with this opinion.

Dated: July 23, 2014                    BY THE COURT,

                                        /s/ *Joy Flowers Conti*
                                        Joy Flowers Conti
                                        Chief United States District Judge